UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING IN PART PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [8]**

Before the Court is Petitioner's Ex Parte Application for Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 8. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS IN PART** the TRO Application.

I.   **BACKGROUND**

On August 22, 2025, Petitioner Mateo Juan Andres Salvador ("Petitioner" or "Andres Salvador") filed a Petition for Writ of Habeas Corpus against Respondents Pamela Jo Bondi, United States Attorney General; Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"); Todd M. Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); Ernesto Santacruz, Jr., Acting Director of the Los Angeles ICE Field Office; and Fereti Semaia, his immediate custodian and warden for the Adelanto ICE Processing Center (collectively, "Respondents" or the "government"). ECF 1 (Pet.). On August 25, 2025, Petitioner filed the instant TRO Application. ECF 8 (Appl.).

Andres Salvador is a 21-year-old citizen of Guatemala. Pet. ¶ 13. On or about October 27, 2021, when he was 17 years old, Andres Salvador entered the United States near San Luis, Arizona and was apprehended by United States Customs and Border Protection ("CBP"). *Id.* ¶ 13, Exs. A, B. Upon entry and his initial detention, Andres Salvador was classified as an Unaccompanied Alien Child ("UAC") pursuant to 6 U.S.C. § 279(g). *Id.* ¶ 13, Ex. B. Andres Salvador was then referred to the Office of Refugee Resettlement ("ORR"), Division of Unaccompanied Children Operations ("DUCO"), and released to his sponsor and brother. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

On May 7, 2022, Andres Salvador was served with a Notice to Appear ("NTA") pursuant to Section 240 of the Immigration and Naturalization Act (the "INA"), 8 U.S.C. § 1229(a). *Id.* ¶ 14. On December 7, 2023, Andres Salvador subsequently applied for asylum under Section 235(d)(7)(B) of the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), 8 U.S.C. § 1158(b)(3)(C). *Id.* ¶¶ 5, 14-15, Ex. C. On January 30, 2024, DHS filed a motion to dismiss the removal proceedings against Andres Salvador pursuant to 8 C.F.R. § 1239.2(c) because Andres Salvador was classified as a UAC and had filed a petition for asylum under the TVPRA, for which United States Citizenship and Immigration Services ("USCIS") had initial jurisdiction under 8 U.S.C. § 208(b)(3)(C). *Id.* ¶ 14, Ex. E; *see also* ECF 11 at 9-10. On May 7, 2025, Andres Salvador filed a separate petition for Special Immigrant Juvenile Status ("SIJS") under INA § 101(a)(27)(J), 8 U.S.C. § 1101(a)(27)(J). *Id.* ¶¶ 5, 14-15, Ex. D. Both applications remain pending before USCIS. *See id.* ¶¶ 14-15.

According to Petitioner, on June 26, 2025, armed, masked and unidentified ICE agents arrived in several unmarked vehicles outside of a Home Depot in Glendale, California and encountered him. *See id.* ¶¶ 2, 16, Ex. F. The ICE agents did not speak to Andres Salvador or inspect any of his documents before one of the agents grabbed Andres Salvador by the arm and "shoved his closed fist into the side of [Andres Salvador's] face." *See id.* ¶ 16. Andres Salvador attempted to explain to the agents in Spanish that he had work authorization through his pending TVPRA asylum application and to present his work permit to the officers. *See id.* The agents refused to inspect his documents. *See id.* Instead, the agents took him into custody and Andres Salvador was issued a new NTA. *Id.* ¶ 16, Ex. H.

Since being taken into custody, Andres Salvador was and continues to be detained at the Adelanto ICE Processing Center. *Id.* ¶ 18; *see also* Appl. at 8. On July 2, 2025, Andres Salvador filed a motion for bond in immigration court pursuant to 8 C.F.R. § 1236, arguing that he was not subject to mandatory detention under INA § 235(b), 8 U.S.C. § 1225(b), because he entered the United States as a UAC. *Id.* ¶ 17. On July 8, 2025, DHS issued a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Interim Guidance").[1] *See* Appl. at 8. The Interim Guidance instructs ICE employees to consider anyone present in the United States who has not been admitted or who arrives in the United States as an "applicant for admission" under INA § 235(a)(1) subject to mandatory detention under INA § 235(b) and ineligible for a bond hearing before an immigration judge. *See id.*

---

[1] *See* ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, Am. Imm. L. Ass'n (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

On August 4, 2025, an immigration judge denied Andres Salvador's motion for bond, finding that the immigration court lacked jurisdiction to consider his request for custody redetermination.[2] *See id.*; Pet. ¶ 17, Ex. G.

In the instant TRO Application, Petitioner seeks a TRO requiring Respondents to release him from custody or to provide him with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of the TRO. ECF 8 at 8. The government opposes. ECF 9. On August 26, 2025, the Court ordered that Petitioner may file a reply in support of the TRO Application and that the matter would then be taken under submission. ECF 10. Petitioner timely filed a Reply. ECF 11.

## II.    **LEGAL STANDARD**[3]

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil

---

[2] Although the written denial order does not state the immigration judge's reasoning, the Petition alleges that the immigration judge found the court lacked jurisdiction "because federal immigration officials classified him as an arriving alien, under section 235(b) of the INA, 8 U.S.C. § 1225(b)(1)." Pet. ¶ 3. This would be consistent with DHS' Interim Guidance.

[3] Ordinarily, the "circumstances justifying the issuance of an ex parte [temporary retraining] order are extremely limited." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (explaining that ex parte TROs are generally limited to cases where "notice to the adverse party is impossible" or where notice "would render fruitless the further prosecution of the action"). Under this district's Local Rules, a party moving for ex parte relief must (a) "make reasonable, good faith efforts orally to advise counsel for all parties, if known, of the date and substance of the proposed ex parte application and (b) advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." L.R. 7-19.1. This notice requirement may be waived if the court "finds that the interest of justice requires that the ex parte application be heard without notice," which in the context of a TRO means that the requisite showing under Federal Rule of Civil Procedure 65(b) has been made. L.R. 7-19.2. Under Rule 65(b), a TRO may be issued without written or oral notice to the adverse party only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). As Respondents note, Petitioner did not comply with the requirements for ex parte TRO applications. *See* ECF 9 at 8. However, because Respondents have actual notice of the instant TRO Application and have filed an Opposition, the Court proceeds to decide the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another," *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

### III. DISCUSSION

#### A. Jurisdiction

As a threshold matter, the government argues that the Court lacks habeas jurisdiction to review Petitioner's claims under several provisions of the INA. ECF 9 at 12-16.

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). It is firmly established that Section 2241 "remain[s] available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").

---

Application.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

1. ***Section 1252(g)***

The government first contends that 8 U.S.C. § 1252(g) "deprives courts of jurisdiction, including habeas corpus jurisdiction, to review" Petitioner's habeas action because his claims "stem from his detention during removal proceedings," which in turn "arises from the decision to commence such proceedings against [him]." ECF 9 at 12-13. Notwithstanding any other provision of law, Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C. § 1252(g). In *Reno v. Am.-Arab Anti-Discrimination Comm.*, the Supreme Court held that § 1252(g) should be ready narrowly to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 525 U.S. 471, 482 (1999). In doing so, the Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* At base, § 1252(g) is a "discretion-protecting provision" that is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485 n.9, 487.

Petitioner's habeas claims do not implicate any of the three discrete, discretionary actions of the Attorney General under § 1252(g). Petitioner challenges whether he is subject to mandatory detention during the pendency of his removal proceedings, not ICE's discretionary authority to decide "when," "where," and "whether" to detain him and commence removal proceedings. "[T]he extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (holding that constitutional challenge to prolonged detention without bond-hearing requirement is not barred by 8 U.S.C. § 1226(e), which bars judicial review of discretionary actions or decisions by the Attorney General regarding the detention of a noncitizen under that section or the denial of bond or parole). As such, "challenge[s] to the statutory framework that permits [the noncitizen]'s detention without bail," *id.* (internal quotation marks omitted), and "questions of law" raised in the application or interpretation of detention statutes, *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011), and "claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241,'" *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002)). The government's reading of Section 1252(g) is impermissibly broad and inconsistent with Supreme Court precedent, which has long stressed that § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings*, 583 U.S. at 294 (citing *Reno*, 525 U.S. at 482-83).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

2.   **Sections 1252(a)(5) and (b)(9)**

The government also asserts that 8 U.S.C. §§ 1252(a)(5) and (b)(9) bar judicial review of Petitioner's claims because he is "challenging the basis upon which he is detained" and the exclusive means of judicial review of such claims is a petition for review to a court of appeals. ECF 9 at 16 (quoting *Jennings*, 583 U.S. at 319 (Thomas, J., concurring)).

Section 1252(b)(9) provides that with respect to review of an order of removal, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). Section 1252(a)(5) clarifies that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued." *Id.* § 1252(a)(5). Respondents cite favorably the Supreme Court's decision in *Reno*, which referred to Section 1252(b)(9) as an "unmistakable 'zipper' clause" that "channels judicial review of all [decisions and actions arising from deportation proceedings]" to a court of appeals. *Reno*, 525 U.S. at 483. It is unmistakably clear as a matter of statutory construction, however, that Section 1252(a)(5) and (b)(9) were intended to "channel judicial review over *final orders of removal* to the courts of appeals," not "foreclose *all* judicial review of agency actions" touching on deportation proceedings writ large. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added in part); s*ee also* 8 U.S.C. § 1252(b) ("With respect to review of an order of removal . . . .").

The *Jennings* plurality explicitly rejected the "expansive" interpretation of § 1252(b)(9) posited by the government here, cautioning that it "would lead to staggering results." 583 U.S. at 293. The Court explained that practically any question of fact or law related to immigration detention technically "aris[es] from" actions taken to remove a noncitizen "in the sense that the [noncitizen's] injuries would never have occurred if they had not been placed in detention." *Id.* However, "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* at 293. The Court reasoned:

> Interpreting "arising from" in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

*Id.*

This logic squarely applies in the context of this case, where Petitioner challenges the legality of his continued detention under Section 1225(b) without a bond hearing, *not* review of a final order of removal. Petitioner is not "challenging the decision to detain [him] in the first place or to seek removal," as the government contends, or "any part of the process by which [his] removability will be determined." *Jennings*, 583 U.S. at 294. Yet under the government's interpretation of Section 1252(b)(9), Petitioner would have no means of seeking judicial review of his challenge to mandatory detention until a final order of removal is entered and Petitioner has filed a petition for review. As for the language the government cites from Justice Thomas' concurrence—that "detention *is* an 'action taken . . . to remove' an alien," ECF 9 at 16 (quoting *Jennings*, 583 U.S. at 319 (Thomas, J., concurring))—the plurality explicitly declined to follow this reasoning because "[t]he question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action." *See Jennings*, 583 U.S. at 294 n.3.

Accordingly, the Court finds that it has habeas jurisdiction over Petitioner's claims and that no provision of § 1252 deprives the Court of this jurisdiction.

**B.    Exhaustion**

The government also argues that Petitioner failed to exhaust his administrative remedies before pursuing relief in federal court because he has not appealed his underlying bond denial to the Board of Immigration Appeals ("BIA"). ECF 9 at 19-20.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted). Courts in the Ninth Circuit may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

"Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

As an initial matter, the government does not elaborate on why any of the *Puga* factors weigh in favor of prudential exhaustion in the context of this case. As to the first factor, without further explanation, it is unclear to the Court why "agency expertise" is necessary to resolve the purely legal questions presented in this case, namely whether Petitioner is entitled to a bond hearing under 8 U.S.C. § 1226(a). "Although the Court acknowledges the BIA's subject-matter expertise for individual immigration bond decisions, 'an administrative appellate record is not necessary to resolve . . . purely legal questions.'" *Rodriguez v. Bostock*, 799 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025) (quoting *Hernandez*, 872 F.3d at 989). Relatedly, as to the second factor, "rather than encouraging other detainees to bypass the administrative process, adjudicating [Petitioner]'s case may answer a recurring legal question and thus reduce the number of future habeas petitions." *Id.* at 1252. As to the last factor, there is no indication that administrative review is likely to result in the agency correcting its own mistake. Indeed, Petitioner cites to an unpublished BIA decision, dated May 22, 2025, in which the BIA affirmed the immigration judge's decision finding a respondent similarly situated to Petitioner is subject to mandatory detention as an applicant for admission. ECF 8 at 19 (citing May 22, 2025, BIA Decision.

Even if the *Puga* factors weighed in favor of prudential exhaustion, Petitioner has demonstrated that pursuing a BIA appeal would be futile and result in irreparable harm. As one district court has explained, "'because of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019). Moreover, district courts in this circuit have routinely waived prudential exhaustion requirements for noncitizens like Petitioner facing prolonged detention while awaiting administrative appeals. *Rodriguez*, 799 F. Supp. 3d at 1253-54 (collecting cases).

The Court therefore "follows the vast majority of cases that have waived exhaustion based on irreparable injury when an individual has been detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019) (collecting cases). Here, Petitioner has already been detained for more than two months.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

**C.**     ***Winter* Factors**

  **1.**     ***Likelihood of Success on the Merits***

"Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner argues that his ongoing detention under Section 1225(b)'s mandatory detention authority and the denial of bond hearing based on the Interim Guidance violates, in relevant part, the Due Process Clause of the Fifth Amendment and the INA and that he instead should be subject to Section 1226(b)'s discretionary detention scheme. Appl. at 12-16; Pet. ¶¶ 28-45. Respondents maintain that Petitioner is lawfully detained under Section 1225(b) because he is properly classified as an "applicant for admission." ECF 9 at 16-20. The Court finds that Petitioner is likely to succeed on or at least has raised "serious questions" going to the merits of his claims that he is unlawfully detained under Section 1225(b) and should instead be subject to Section 1226(a)'s discretionary detention scheme.

The legal question presented here is primarily one of statutory interpretation. As the Ninth Circuit has observed, "divining [the] meaning . . . of [t]he complex provisions of the INA . . . is ordinarily not for the faint of heart." *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (en banc). Yet even when a statute is ambiguous or internally contradictory, courts must "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). The Court's analysis "begins with the language of the statute." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2022) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004)).

The Supreme Court has observed that Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289. Specifically, the provision provides that "on a warrant issued by the Attorney General, a[ ] [noncitizen] may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General may continue to detain the arrested noncitizen, release him on bond, or release him on conditional parole. *Id.* Individuals detained under § 1226(a) are entitled to receive bond hearings at the outset of detention. 8 C.F.R. § 236.1(d)(1); *see also Jennings*, 583 U.S. at 306. Section 1226(a) and its implementing regulations further "provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Section 1226(c) then "carves out a statutory category of [noncitizens] who may *not* be released under

Case 2:25-cv-07946-MRA-MAA   Document 12   Filed 09/02/25   Page 10 of 14   Page ID #:139

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

§ 1226(a)." *Jennings*, 583 U.S. at 289. The subsection specifically mandates detention for a noncitizen "who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* It also includes noncitizens who are "inadmissible" as well as those who are "deportable." *See* 8 U.S.C. § 1226(c)(1)(A), (D), (E). As one district court recently observed, "[a] plain reading of this exception implies that the default discretionary bond procedures in Section 1226(a) apply to a noncitizen who . . . is present without being admitted or paroled but *has not been* implicated in any crimes as set forth in Section 1226(c)." *Rodriguez*, 779 F. Supp. 3d at 1256.

On the other hand, Section 1225 "applies primarily to [noncitizens] seeking entry into the United States." *Jennings*, 583 U.S. at 297. Under 8 U.S.C. § 1225(a), a noncitizen who "arrives in the United States" or "is present" in the United States but "has not been admitted" is treated as "an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they can be admitted into the country consistent with immigration law. *Id.* § 1225(a)(3). "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.* Section 1225(b)(1) "applies to [noncitizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," who are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). Section 1225(b)(2), the "broader" of the two, "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* Section 1225(b)(2) mandates detention "for a [removal] proceeding" if "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A). Thus, as a matter of statutory construction, the Court finds at the TRO stage that Petitioner is likely to succeed in proving that the mandatory detention provision under Section 1225(b) applies only to arriving noncitizens who are deemed inadmissible upon inspection, not noncitizens who have entered the country and are arrested following internal enforcement operations. *See also Torres v. Barr*, 976 F.3d 918, 926 (9th Cir. 2020) (interpreting the phrase "as an applicant for admission" in the context of the INA to include "a distinct point in time").

The facts presented in this case underscore the fundamental flaws with the government's interpretation of Section 1225 as applied here. There is no dispute that Petitioner entered the United States when he was 17 years old and that, upon inspection, he was processed as a UAC and ultimately transferred to ORR custody as required under the TVPRA, 8 U.S.C. § 1232(b). In other words, when Petitioner crossed the border and was apprehended, the government did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

classify him as an applicant for admission subject to expedited removal. That Petitioner should now—approximately four years after entering the country and being released by ORR—be treated as an "applicant for admission" defies logic.

Notwithstanding the clear textual separation between Sections 1225 and 1226, the government takes the position—as reflected in the Interim Guidance—that Section 1225's mandatory detention authority applies to all noncitizens who have not been admitted, including those, like Petitioner, who have long since entered and established presence in the United States. As other district courts have recently held, this interpretation is not supported by the text, legislative history, or the agency's longstanding practice. *See, e.g., Rodriguez*, 779 F. Supp. 3d at 1258-61; *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5-7 (D. Mass. July 7, 2025). "[O]ne of the most basic interpretive canons, that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted). Yet the government's interpretation "would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens." *Rodriguez*, 779 F. Supp. 3d at 1258. This notably includes Section 1226(c)(1)(E)—added to Section 1226 in 2025 by the Laken Riley Act—which makes a noncitizen subject to mandatory detention if he (i) is inadmissible under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7) (the "inadmissibility criterion"); "*and*" (ii) is charged with, arrested for, convicted of, or admits to committing certain crimes (the "criminal conduct criterion"). 8 U.S.C. § 1226(c)(1)(E) (emphasis added). The government's interpretation "would render Section 1226(c)(1)(E)'s criminal conduct criterion superfluous for noncitizens who are inadmissible on two of the three grounds specified in the inadmissibility criterion." *Gomes*, 2025 WL 1869299, at *7; *see also Rodriguez*, 779 F. Supp. 3d at 1259. That Section 1225 and 1226 apply to separate sets of noncitizens means that there is no "irreconcilable conflict" between the two provisions, as the government implies. *See* ECF 9 at 16.

### 2. Irreparable Harm

Petitioner argues that in the absence of a TRO, he will continue to be unlawfully detained pursuant to § 1225(b)(2) and denied a bond hearing before an immigration judge. ECF 8 at 16-17. The government responds that the Court "cannot weigh this [factor] strongly in favor of Petitioner" because "he has an adequate remedy in appealing to the BIA" and "Petitioner's alleged harm is essentially inherent in detention." ECF 9 at 20.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Indeed, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation omitted). For reasons explained above, the Court does not find that an appeal to the BIA is an adequate remedy in this context. The government does not cite any caselaw in support of the proposition that harm "inherent" to detention is entitled to lesser weight. To the contrary, the Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez*, 872 F.3d at 995. The Court finds that Petitioner's allegedly unlawful detention without a bond hearing before an immigration judge inherently causes irreparable harm.

### 3. Balance of Equities and Public Interest

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because the government's policy as applied in this case and others violates federal law. ECF 8 at 17-18. The government responds that it has "a compelling interest in the steady enforcement of its immigration laws" and an "'institutional interest' to protect its 'administrative agency authority.'" ECF 9 at 20-21.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion that the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA). That the government has an interest in enforcing its immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing

Case 2:25-cv-07946-MRA-MAA   Document 12   Filed 09/02/25   Page 13 of 14   Page ID #:142

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

the TRO.

### D. Scope of Relief

The Supreme Court "has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (collecting cases). Injunctive relief "should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *U. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Id.* (citation omitted).

In the TRO Application, Petitioner primarily seeks a TRO "enjoining Respondents from continuing to detain him unless Petitioner is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the TRO." ECF 8 at 9. The Court agrees that the requested relief is narrowly tailored to remedy the specific harm shown. Petitioner also requests in passing an order prohibiting Respondents from relocating Petitioner outside of this district pending final resolution of this litigation. *Id.* However, he does not allege that he will suffer any immediate, threatened injury if he is transferred to another district while detained. And the Court retains jurisdiction to adjudicate the Petition even if Petitioner is transferred to another district. *See Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (holding that a district court's jurisdiction over a § 2241 petition "attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." (citation and quotation marks omitted)); *Rincon-Corrales v. Noem*, No. 2:25-CV-00801-APG-DJA, 2025 WL 1342851, at *2 (D. Nev. May 8, 2025) ("[O]nce a petitioner has properly filed a habeas petition in the district of confinement, any subsequent transfer does not strip the filing district of habeas jurisdiction.").

### E. Bond

Rule 65(c) provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-07946-MRA-MAA | Date | September 2, 2025 |
|---|---|---|---|
| Title | *Mateo Juan Andres Salvador v. Pamela Jo Bondi, et al.* | | |

her conduct." *Id.* (citation omitted). That is, the mandatory language of Rule 65(c) does not "absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003). Here, Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed. The Court therefore exercises its discretion and waives the bond requirement under Rule 65(c).

## IV. CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED IN PART**. The Court **ORDERS** as follows:

1. Respondents are enjoined from continuing to detain Petitioner unless they provide him with an individualized bond hearing before an immigration judge under 8 U.S.C. § 1226(a) within ten (10) days of the date of this Order.

2. Respondents shall record the hearing provided in connection with this Order and lodge a transcript of those proceedings in this action.

3. This TRO shall take immediate effect on **September 2, 2025**, and expires at 5:00 p.m. on **September 16, 2025**. The TRO may be extended for good cause or upon Respondents' consent.

4. Respondents are **ORDERED TO SHOW CAUSE** on **September 15, 2025, at 10:30 a.m.**, why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents must file any written response to the Order to Show Cause no later than **September 8, 2025**. Petitioner may file a reply no later than **September 11, 2025**.

**IT IS SO ORDERED.**

                    \_\_\_ : \_\_\_

Initials of Deputy Clerk   mku